IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLIINOIS, EASTERN DIVISION

| | |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>PATRICK BERNARD and SHELTER MUTUAL INSURANCE COMPANY,<br><br>    Defendants. | Court No: 21-CV-04028 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the Plaintiff, UTICA MUTUAL INSURANCE COMPANY, by and through its attorneys, Jill B. Lewis of Marasa Lewis, Ltd., and for its Complaint for Declaratory Judgment against defendants, PATRICK BERNARD and SHELTER MUTUAL INSURANCE COMPANY, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment brought pursuant to 28 U.S.C. §2201 to determine and resolve questions of actual controversy involving underinsured motorists ("UIM") coverage available under a commercial auto policy of insurance issued by Utica Mutual Insurance Company to KJI Auto Repair, Inc. and under a personal auto policy issued by Shelter Mutual Insurance Company to Patrick Bernard for injuries allegedly sustained in an accident that occurred on September 28, 2017 at or near Illinois Route 7 near Theodore Street in the City of Joliet, County of Will, State of Illinois as a result of the negligent driving of underinsured driver, Nicole Ponziano.

**THE PARTIES**

2. Plaintiff, Utica Mutual Insurance Company ("Utica"), is a New York insurance

company with its principal place of business at 180 Genesee Street, New Hartford, New York 13413 and, at all relevant times, was authorized to and did transact business in the State of Illinois, including the issuance of commercial auto policies of insurance.

3. Defendant, Patrick Bernard ("Bernard"), the President and owner of KJI Auto Repair, Inc., is a claimant for underinsured motorists coverage under the Utica and Shelter policies and, at all relevant times, has been a resident of the City of Joliet, County of Will, State of Illinois.

4. Defendant, Shelter Mutual Insurance Company ("Shelter") is a Missouri insurance company with its principal place of business at 1817 West Broadway, Columbia, Missouri 65218 and, at all relevant times, was authorized to and did transact business in the State of Illinois, including the issuance of auto policies of insurance.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a) because the plaintiff and defendants are citizens of different states and because the amount in controversy exceeds $75,000, exclusive of interest and costs, as Bernard is claiming damages in excess of Shelter's $250,000 UIM policy limits.

6. Venue is proper in this District, pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events giving rise to the claims for coverage under the policies issued by Utica and Shelter occurred within this District.

## BACKGROUND FACTS

7. On September 28, 2017, Nicole Ponziano ("Ponziano") was operating a 2004 Hyundai Santa Fe westbound on Illinois Route 7 in Joliet, Illinois when she attempted to make a left turn onto Theodore Street, striking a 1999 Ford Windstar vehicle owned by a customer of KJI Auto Repair and operated by Bernard who was traveling eastbound on Illinois Route 7.

8. In attempting to make a left turn from Illinois Route 7 onto Theodore Street, Ponziano negligently operated her vehicle by, among other things, failing to yield to eastbound vehicles, including the vehicle operated by Bernard, and, as a result, struck the Bernard vehicle head-on.

9. At the time of said accident, Bernard was operating the customer-owned 1999 Ford Windstar in the course and scope of his business, KJI Auto Repair.

10. As a result of the said accident, Bernard claims he sustained injuries to his right shoulder, neck and spine which resulted in various surgical procedures.

11. Upon information and belief, on and prior to September 28, 2017, Ponziano was insured under a personal auto policy of insurance with Progressive with a limit of liability of $25,000 per accident.

## THE UTICA POLICY AND UIM ENDORSEMENT

12. On October 7, 2016, Utica issued a commercial auto policy to KJI Auto Repair, the named insured, under Policy No. 4983801, effective October 7, 2016 to October 7, 2017 (the "Policy"). (Policy - **Exhibit A**).

13. The Declarations Page provides Underinsured Motorists ("UIM") Coverage with a limit of insurance of $1,000,000 (per accident) for covered autos identified by symbols "8" and "9."

14. Symbol "9" means "non-owned autos" you "do not own, lease, hire, rent or borrow that are used in connection with your business."

15. The Policy's UIM Endorsement (Form CA 21 38 11 08) provides in relevant part:

> 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle."
>
> 2. We will pay only after all liability bonds or policies have been

        exhausted by payment of judgments or settlements, unless:

        a.    We have been given prompt written notice of a "tentative settlement" and decide to advance payment to the "insured" in an amount equal to that "tentative settlement" within 30 days after receipt of notification; or

        b.    We and an "insured" have reached a "settlement agreement".

(Utica's UIM Endorsement Form – **Exhibit A1).**

16.    Under the UIM Endorsement, an "insured" includes anyone "occupying" a non-owned auto.

17.    Section D contains the following provisions affecting the Limit of Insurance:

    1.    Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Underinsured Motorists Coverage shown in this endorsement.

    2.    Except in the event of a "settlement agreement," the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:

        a.    By or for anyone who is legally responsible * * *

18.    Section E contains an "Other Insurance" provision which provides, in pertinent part:

    If there is other applicable insurance available under one or more policies or provisions of coverage:

a.    The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

b.    Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible underinsured motorists insurance providing coverage on a primary basis.

c.    If the coverage under this Coverage Form is provided:

    (1)    On a primary basis, we will pay only our share of the loss

    that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

  (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

19. Section E sets forth "Duties In The Event Of Accident, Claim, Suit Or Loss" which required insureds to:

  a. Give us written notice of a "tentative settlement" and allow us to advance payment in an amount equal to that settlement within 30 days after receipt of notification to preserve our rights against the owner or operator of the "underinsured motor vehicle".

  b. File "suit" against the owner or operator of the "underinsured motor vehicle" prior to the conclusion of a "settlement agreement". Such "suit" cannot be abandoned or settled without giving us written notice of a "tentative settlement" and allowing us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle."

  c. Promptly send us copies of the legal papers if a "suit" is brought.

20. The Commercial Auto Coverage Form includes a "Transfer of Rights of Recovery Against Others to Us" provision:

  If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

21. The UIM endorsement added the following:

  **Transfer Of Rights Of Recovery Against Others To Us** does not apply to damages caused by an "accident" with an "underinsured motor vehicle" if we:

    a.    Have been given written notice of a "tentative settlement" between an "insured" and the insurer of an "underinsured motor vehicle"; and

    b.    Fail to advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of the notice.

22.    The UIM Endorsement contains the following definitions:

    2.    "Occupying" means in, upon, getting in, on, out or off.

    3.    "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the owner or operator of the "underinsured motor vehicle", damages for "bodily injury" and, without arbitration, agree also as to the amount of damages. * * *

    4.    "Tentative settlement" means an offer from the owner or operator of the "underinsured motor vehicle" to compensate an "insured" for damages incurred because of "bodily injury" sustained in an accident involving an "underinsured motor vehicle".

    5.    "Underinsured motor vehicle" means a land motor vehicle . . . for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged but that sum is either less than the Limit of Insurance of this coverage or reduced by payments to other persons * * *

23.    The UIM Endorsement provides that "either party may make a written demand for arbitration" if the parties disagree as to whether (i) the insured is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or (ii) do not agree as to the amount of damages that are recoverable.

## THE SHELTER POLICY AND UIM COVERAGE

24.    On July 3, 2017, Shelter issued a personal auto policy of insurance to Bernard under Policy No. 121934643211, effective July 3, 2017 to July 3, 2018, with a limit of $250,000 per accident. (Shelter Policy – **Exhibit B**).

25.    The policy defines "uninsured motor vehicle" as a motor vehicle "covered by a policy of liability insurance applicable to the occurrence" but "its limits are less than those provided" for by

the Shelter policy. (Definitions, No. 52, p. 5).

26. Part IV – Coverage E - provides Uninsured Motor "UM" Vehicle Liability Coverage.

27. "Insured" means "You, relatives; and individuals occupying the described auto."

28. UM coverage is provided only when underlying liability insurance is exhausted.

No insurance is provided under this coverage until:

(1) Settlements or payment of judgments have exhausted the limits of liability of all liability bonds and policies that apply to the insured's damages; or
(2) The insured making the claim under this policy has notified us, in writing, of his or her intent to enter into a settlement agreement that will compensate him or her for a portion of his or her damages; and has given us at least 30 days from the date of that notice to either:
  (a) Make a substitute payment in lieu of such settlement proceeds in order to preserve our rights under this policy; or
  (b) To waive the requirement of exhausting such limits.

29. The Shelter UM Coverage Form contains the following "other insurance" provision:

INSURANCE WITH OTHER COMPANIES
If an insured suffers bodily injury to which this coverage applies, and uninsured motorists or underinsured motorists insurance provided by another insurance company also applies to that bodily injury, we will not be liable for a greater portion of any loss than the limits of liability of this insurance bears to the total limits of liability of this insurance and any other similar insurance available to the insured.

If it is impossible to reconcile the provisions of all applicable policies to determine the order in which their benefits apply, the limits of Coverage E will be prorated with all such other policies based on the applicable limits of each, up to the total limits of liability of all the applicable policies.

30. The Shelter policy further provides:

COMPLETE EXCLUSIONS FROM COVERAGE E
Coverage E does not apply:

(1) If, without our written consent, the insured or the insured's legal representative releases any of the insured's rights of recovery against the owner or operator of an uninsured motor vehicle wo is, or may be, legally liable for damages payable under this coverage.

(2) If the insured or the insured's legal representative institutes a lawsuit against the owner or operator of an uninsured motor vehicle who is, or may be, legally liable for damages payable under this coverage and fails to notify us of that fact within a reasonable time.

. . .

OUR RIGHT TO SUBROGATION OR REIMBURSEMENT

If an insured has a right of recovery against any person for damages paid under this coverage, but fails to file a lawsuit to enforce that right in the time allowed by the applicable statute of limitations, and thereby prejudices our ability to enforce our rights under this policy provision, that insured's right to recover for the same damages under this policy are excluded.

If, without our written consent, the insured or the insured's legal representative releases any of the insured's rights of recovery against any person who may be responsible for the damages upon which our payment under this coverage was based and thereby prejudices our ability to enforce our rights under this policy's provisions, that insured's right to recover for the same damages under this policy are excluded.

31. The Shelter policy required cooperation of all insureds:

All insureds must cooperate with us in the investigation, settlement and defense, of any claim. * * *

Any person who makes a claim for any coverage under this policy, must promptly:
(1) Send us all correspondence and all legal papers that relate to any claim;

**BERNARD FILES SUIT AGAINST THE UNDERINSURED MOTORIST**

32. On September 26, 2019, Bernard filed a civil lawsuit against Ponziano, the uninsured motorist, in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois, entitled *Patrick Bernard v. Nicole Ponziano*, under Court No. 2019 L 831; but no further action was taken and the case was dismissed by the court for want of prosecution on January 14, 2020.

33. On September 30, 2019, the day the statute of limitations expired, Bernard filed a second lawsuit against Ponziano, the uninsured motorist, in the Circuit Court of Cook County,

Illinois, Law Division, entitled *Patrick Bernard v. Nicole Ponziano*, Case No. 2019 L 010739 ("Ponziano lawsuit").

34. Prior to November 27, 2019, Bernard and Ponziano reached a settlement agreement.

35. On November 27, 2019, Bernard dismissed his civil lawsuit against Ponziano with prejudice pursuant to settlement. (Exhibit C).

## BERNARD FILES UIM CLAIMS AND THEN DOES NOTHING

36. On September 27, 2019, Bernard's counsel sent correspondence to Utica stating he was representing Bernard in an underinsured motorists claim against Utica and was making a demand for arbitration.

37. Upon information and belief, Bernard's counsel also sent correspondence to Shelter dated September 27, 2019 to Shelter stating he was making an underinsured motorists claim against Shelter and was making a demand for arbitration.

38. On November 13, 2019, counsel for Bernard confirmed to Utica the policy limits for the Progressive policy were $25,000.

39. At no time did Bernard provide written notice to Utica or Shelter of a settlement offer or "tentative settlement" with Ponziano prior to his dismissal of the lawsuit with prejudice.

40. At no time did Bernard provide oral or written notice to Utica or Shelter of either lawsuit filed against the underinsured motorist, Ponziano.

41. At no time did Bernard send Utica or Shelter suit papers in either of the lawsuits.

42. At no time did Bernard provide oral or written notice to Utica or Shelter that the lawsuits against Ponziano had been dismissed with prejudice pursuant to settlement and dismissed for want of prosecution.

43. At no time did Bernard provide oral or written notice to Utica or Shelter of the settlement agreement or release of the underinsured motorist, Ponziano.

44. To date, Bernard has never provided Utica or Shelter with documentation evidencing the policy limits of the underinsured motorists policy, the settlement agreement, or release.

45. Upon information and belief, at no time did Bernard file a claim or otherwise seek underinsured motorists coverage from the carrier for the customer's vehicle being operated by Bernard at the time of the accident of September 28, 2017.

### SHELTER DISCLAIMS UIM COVERAGE

46. On March 4, 2021, Shelter issued a disclaimer letter to Bernard advising it was closing its file and considering Bernard's request for arbitration withdrawn. (3/4/2021 Disclaimer – **Exhibit C**).

47. Shelter disclaimed uninsured coverage to Bernard, in part, on the following grounds:

- As of the date of the arbitration demand of September 27, 2019, there was no underinsured coverage available and no issue to arbitrate as the tortfeasor's insurance had not been exhausted nor had Shelter been notified of an intent to settle with the tortfeasor;

- Bernard failed to obtain Shelter' written consent prior to releasing and settling his claims against the tortfeasor, Ponziano, and, as a result, underinsured motorists coverage is excluded;

- Bernard failed to inform Shelter of the lawsuits against the tortfeasor, failed to cooperate with Shelter, failed to send Shelter any suit papers or communicate with Shelter relative to the UIM claim, and failed to notify Shelter of any settlement offers and, as such, abandoned his underinsured claim and withdrew the arbitration demand.

### COUNT I
### DECLARATORY JUDGMENT
### UTICA OWES NO UIM COVERAGE TO BERNARD

48. Plaintiff adopts and re-alleges all of the facts and allegations contained in paragraphs 1 through 47 above as paragraph 48 of Count I, as though fully set forth herein.

–10–

49. At the time of Bernard's demand for arbitration of the UIM claim on September 27, 2019, Utica owed no UIM coverage since none of the following had occurred: the liability policies had not been exhausted; Bernard had not provided written notice of a "tentative settlement;" and Utica and Bernard had not reached a "settlement agreement."

50. Under the terms and conditions of the Policy and UIM Endorsement, Bernard was required to, among other things, (i) give Utica written notice of a tentative settlement with the underinsured motorist to allow it to advance payment within 30 days to preserve its rights against the owner or operator of the underinsured motor vehicle; (ii) to not abandon or settle a lawsuit without giving Utica written notice of a "tentative settlement" to allow Utica to advance payment within 30 days to preserve its rights against the owner or operator of the "underinsured motor vehicle"; and (iii) to promptly send us copies of the legal papers if a "suit" is brought.

51. In breach of the Policy and UIM Endorsement, Bernard:

    (a) Failed to provide written notice of the lawsuits to Utica;

    (b) Failed to send copies of suit papers to Utica;

    (c) Abandoned, dismissed and/or failed to prosecute the lawsuits prior to providing written notice of a tentative settlement to Utica;

    (d) Failed to provide written notice of an offer from Progressive until after the statute of limitations had expired; and

    (e) Failing to preserve Utica's rights of recovery against Ponziano.

52. As a direct and proximate result of Bernard's failure to comply with the terms and conditions of the Utica Policy and UIM Endorsement, Utica is relieved of its obligation to provide UIM coverage to Bernard in connection with the September 29, 2017 accident or any injuries resulting from said loss.

53. Utica has been prejudiced by Bernard's failure to comply with the terms and conditions of the Policy and UIM Endorsement by having any rights of recovery it may have had against Ponziano extinguished by virtue of the statute of limitations having expired and by learning of the tentative settlement more than 30 days after the lawsuit had been dismissed with prejudice pursuant to settlement and without knowledge of the existence of the Will County lawsuit.

54. The above contentions of Utica are denied and disputed by defendant Bernard who, in turn, contends that it is an insured under the Utica Policy, that it is entitled to UIM coverage, and that it complied with all terms and conditions of coverage under the Utica Policy.

55. By reason of the foregoing, an actual and justiciable controversy exists between Utica and Bernard which may be determined by judgment or order of the Court and that, pursuant to 735 IL CS 5/2-701 *et seq.*, this Court has the power to declare and adjudicate the rights and liabilities of the parties under the terms and provisions of the policy of insurance issued by Utica to KJI Auto Repair with respect to the subject UIM claim of Bernard, and to adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce the same.

WHEREFORE plaintiff, UTICA MUTUAL INSURANCE COMPANY, prays that this Court enter judgment in its favor and against defendants, PATRICK BERNARD and SHELTER MUTUAL INSURANCE COMPANY, and enter an Order finding and declaring the rights of the parties as follows:

    A.    That Bernard failed to comply with the terms and conditions of the Policy and UIM Endorsement;

    B.    That Bernard's failure to comply with the notice provisions prevented Utica from exercising its rights of recovery under the Policy and UIM Endorsement;

    C.    That, as a result of Bernard's failure to comply, Utica owes no underinsured motorists coverage to Bernard for damages allegedly sustained in the September 28, 2017 accident;

D. That Bernard is not entitled to underinsured motorists coverage from Utica;

E. Any further relief that this Court deems proper and just under the circumstances.

## COUNT II
## IN THE ALTERNATIVE,
## DECLARATORY JUDGMENT UTICA'S UIM COVERAGE IS EXCESS

56. Plaintiff adopts and re-alleges all of the facts and allegations contained in paragraphs 1 through 55 above as paragraph 56 of Count II, as though fully set forth herein.

57. Pleading in the alternative, if Utica owes underinsured motorists coverage to Bernard, its coverage is excess over the Shelter policy.

58. At the time of the accident, Bernard was operating a non-owned vehicle.

59. The Utica UIM Endorsement provides coverage for non-owned vehicles, but expressly provides in section E - "Other Insurance" that:

> b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible underinsured motorists insurance providing coverage on a primary basis.

60. The Shelter policy constitutes "any other collectible underinsured motorists insurance providing coverage on a primary basis."

61. The above contentions of Utica are denied and disputed by defendants, Patrick Bernard and Shelter Mutual Insurance Company.

62. By reason of the foregoing, an actual and justiciable controversy exists between Utica, Bernard and Shelter, which may be determined by judgment or order of the Court and that, pursuant to 735 IL CS 5/2-701 *et seq.*, this Court has the power to declare and adjudicate the rights and liabilities of the parties under the terms and provisions of the policy of insurance issued by Utica to KJI Auto Repair with respect to the underlying underinsured motorists claim, and to adjudicate

the final rights of all parties and give such other and further relief as may be necessary to enforce the same.

WHEREFORE plaintiff, UTICA MUTUAL INSURANCE COMPANY, prays that this Court enter judgment in its favor and against defendants, PATRICK BERNARD and SHELTER MUTUAL INSURANCE COMPANY and enter an Order finding and declaring the rights of the parties as follows:

    A.    That the underinsured motorists coverage provided by Utica is excess over the Shelter primary policy relative to the Bernard claim;

    B.    That the Shelter policy constitutes "any other collectible underinsured motorists insurance providing coverage on a primary basis"; and

    C.    Any further relief that this Court deems proper and just under the circumstances.

### COUNT III
### IN THE ALTERNATIVE,
### DECLARATORY JUDGMENT
### BERNARD FORFEITED EXCESS COVERAGE UNDER THE UTICA POLICY

63.    Plaintiff adopts and re-alleges all of the facts and allegations contained in paragraphs 1 through 62 above as paragraph 63 of Count III, as though fully set forth herein.

64.    Pleading in the alternative, as an insured under the Shelter policy, Bernard was required to comply with all terms and conditions of coverage and to reasonably attempt to obtain all primary underinsured motorists coverage available.

65.    By (i) failing to notify Shelter of the settlement with uninsured motorists; (ii) failing to notify Shelter of the lawsuit against the uninsured motorists; and (iii) failing to obtain Shelter's consent to dismiss the lawsuit against the uninsured motorist, Bernard forfeited his right to obtain primary underinsured coverage under the Shelter policy.

66. But for Bernard's failure to comply with the terms of the Shelter policy, Bernard would have had primary coverage available under the Shelter policy and Shelter would have been obligated to provide Bernard UIM coverage if the conditions for coverage had been satisfied by Bernard.

67. At the time of the accident, Bernard was operating a non-owned vehicle.

68. The Utica UIM Endorsement provides coverage for non-owned vehicles, but expressly provides in section E - "Other Insurance" that:

> b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible underinsured motorist insurance providing coverage on a primary basis.

69. The Shelter policy constitutes "any other collectible underinsured motorist insurance providing coverage on a primary basis."

70. At the time Bernard filed his UIM claim and demanded arbitration with Utica, "other collectible insurance existed" with Shelter.

71. Bernard failed to satisfy the requirements for coverage under the Shelter policy and thus excess coverage under the Utica policy is not implicated.

72. By failing to reasonably attempt to obtain the available primary coverage from Shelter, Bernard forfeited excess underinsured coverage under the Utica policy.

73. The above contentions of Utica are denied and disputed by defendants, Patrick Bernard and Shelter Mutual Insurance Company.

74. By reason of the foregoing, an actual and justiciable controversy exists between Utica, Bernard and Shelter, which may be determined by judgment or order of the Court and that, pursuant to 735 IL CS 5/2-701 *et seq.*, this Court has the power to declare and adjudicate the rights

and liabilities of the parties under the terms and provisions of the policy of insurance issued by Utica to KJI Auto Repair with respect to the underlying underinsured motorists claim, and to adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce the same.

WHEREFORE plaintiff, UTICA MUTUAL INSURANCE COMPANY, prays that this Court enter judgment in its favor and against defendants, PATRICK BERNARD and SHELTER MUTUAL INSURANCE COMPANY and enter an Order finding and declaring the rights of the parties as follows:

A. That Bernard forfeited primary underinsured motorist coverage provided by Shelter;

B. The Shelter policy constitutes "any other collectible underinsured motorist insurance providing coverage on a primary basis";

C. That Bernard forfeited excess underinsured motorists coverage provided by Utica;

D. That Bernard is not entitled to underinsured motorists coverage from Utica; and

E. Any further relief that this Court deems proper and just under the circumstances.

Respectfully submitted,

MARASA LEWIS, LTD.

By: /s/ Jill B. Lewis
Attorneys for Plaintiff

Jill B. Lewis, Esq.
Marasa Lewis, Ltd.
161 N. Clark Street
Suite 1600
Chicago, IL 60601
(312) 345-7226
jlewis@marasalewis.com
*Attorneys for Plaintiff Utica Mutual Insurance Company*